1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| MAXIMO BERREONDO, | 1:11-cv-00432-LJO-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECCOMMENDING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| JONATHAN AKANNO, | (ECF No. 66) |
| Defendant. | THIRTY-DAY OBJECTION PERIOD |

11
12
13
14
15
16

Plaintiff Maximo Berreondo ("Plaintiff"), a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 14, 2011. Plaintiff filed a First Amended Complaint ("FAC") on June 30, 2011. ECF No. 10. On October 4, 2011, the Court found a cognizable Eighth Amendment claim against Defendant Akanno for medical deliberate indifference to a serious medical need. ECF No. 14.

On June 28, 2013, Defendant filed this Motion for Summary Judgment.[1] ECF No. 66. Plaintiff opposed the motion on August 5, 2013, and Defendant filed his reply on September 9, 2013. ECF Nos. 70 & 83. The motion is deemed submitted pursuant to Local Rule 230(*l*).

---

[1]  In Defendant's Notice of Motion dated June 28, 2013, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

## I.    LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. The opposing party

2

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

## II.    EVIDENTIARY OBJECTIONS

Defendant objected to Plaintiff's Exhibits 3-7 on relevance, hearsay and authentication grounds. ECF No. 81. In addition, Defendant objected to paragraphs 1, 2, 3, and 10 of Plaintiff's declaration as conclusory and lacking evidentiary facts sufficient to defeat the motion for summary judgment. ECF No. 82. It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n. 9 (9th Cir.1980) (citing *United States v. Dibble*, 429 F.2d 598, 601-02 (9th Cir.1970)).

### A.    <u>Relevance</u>

Given the Court's duty to determine whether there exists a genuine dispute as to any material fact, an independent objection to evidence as irrelevant is both unnecessary and unhelpful. *E.g., Carden v. Chenega Sec. & Prots. Servs., LLC*, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); *Arias v. McHugh*, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); *Tracchia v. Tilton*, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); *Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. Jun. 5, 2006). Defendant's objections on relevancy grounds are therefore disregarded.

### B.    <u>Authentication</u>

Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility." A foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims" before evidence may be admitted. Fed. R. Evid. 901(a). Unauthenticated documents cannot be considered in a motion for summary judgment. *Las Vegas Sands, LLC v. Nehme*. 632 F.3d 526, 532 (9th Cir. 2011) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks

omitted).    Therefore,  lack  of  proper  authentication  is  an  appropriate  objection  where  a document's  authenticity  is  genuinely  in  dispute.

"An  inquiry  into  authenticity  concerns  the  genuineness  of  an  item  of  evidence,  not  its admissibility,"  *Orr*,  285  F.3d  at  776,  and  documents  may  be  authenticated  by  review  of  their contents  if  they  appear  to  be  sufficiently  genuine,  *Las  Vegas  Sands,  LLC*,  632  F.3d  at  533  (citing Orr,  285  F.3d  at  778  n.24)  (quotation  marks  omitted).    No  suggestion  was  made  that  these documents  are  not  what  they  purport  to  be.

Defendant  objects  to  Plaintiff's  Exhibit  5  (Discharge  Instructions  for  Pressure  Ulcer), Exhibit  6  (Mercy  Hospital  Medical  Records),  and  Exhibit  7  (Bakersfield  Memorial  Hospital Records)  as  lacking  foundation.    The  appearance,  contents,  and  substance  of  these  documents allows  the  Court  to  easily  conclude  that  the  documents  have  been  authenticated  by  their distinctive  characteristics  and  that  they  are  what  they  appear  to  be.

If  Defendant  genuinely  disputed  the  authenticity  of  any  of  these  documents,  he  could have  made  specific  objections  as  to  those  documents.    Notably,  he  did  not  and  the  bare  objection to  Plaintiff's  exhibits  for  lack  of  proper  authentication  is  overruled.    Fed.  R.  Evid.  901(b)(4);  *Las Vegas  Sands*,  LLC,  632  F.3d  at  533.

Defendant  also  objects  to  Exhibits  3  and  4  on  the  ground  of  authentication.    Exhibits  3 and  4  contain  various  internet  articles  on  decubitus  ulcers  and  spinal  cord  injury.    Plaintiff merely  attached  these  documents  as  exhibits,  which  does  not  equate  to  proper  authentication. *See  Beyene  v.  Coleman  Sec.  Servs.,  Inc.*,  854  F.2d  1179,  1182  (9th  Cir.  1988).    Thus, Defendant's  objection  shall  be  sustained  for  Exhibits  3  and  4.

## C.    **Hearsay**

Affidavits  or  declarations  used  in  support  of  or  opposition  to  a  motion  for  summary judgment  "must  be  made  on  personal  knowledge,  set  out  facts  that  would  be  admissible  in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration." *Tracchia*, 2009 WL 3055222 at * 3.

Defendant objects to Plaintiff's Exhibit 5 (Discharge Instructions for Pressure Ulcer), Exhibit 6 (Mercy Hospital Medical Records), and Exhibit 7 (Bakersfield Memorial Hospital Records) on the grounds that they are hearsay. As to these medical records, they are records of a regularly conducted activity and are excepted from the rule against hearsay. Fed. R. Evid. 803(6). If Defendant genuinely disputed specific portions of any of these documents as falling outside the business records exception, he could have made specific objections as to those parts. Notably, he did not and the bare objection to Plaintiff's exhibits as hearsay is overruled.

## III.   UNDISPUTED FACTS

Plaintiff's separate statement of material facts and opposition to the motion for summary judgment do not address Defendant's undisputed facts, and make conclusory statements without citing to any evidence to support his contentions. ECF Nos. 70 & 72. In fact, Plaintiff does not provide any admissible documentary evidence to support his contentions that Defendant acted with deliberate indifference. Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified FAC. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

At the time of the events in question, Plaintiff was incarcerated at Kern Valley State Prison ("KVSP"). FAC at 1. At the time of the events, Defendant Akanno was employed as a physician and surgeon at KVSP. Def's Ex. F, Akanno Decl. ¶ 1.

**Plaintiff's  Medical History Prior  to KVSP[2]**

On March 3, 2002, Plaintiff was shot ten times while awaiting trial.  Def's Ex. C, Pl's Dep. April 16, 2013 at 11:17-25.  He suffered injuries to his face, neck, chest, back, arms, hands, hips, calves, and stomach.  *Id.* at 12:1-4.  As a result of the gunshot wounds, Plaintiff is a T-12 paraplegic. *Id.*at 12:16-23.   Paraplegics, like Plaintiff, are at high risk for developing pressure ulcers.  Def's Ex. D, Barnett Decl. ¶ 7.   Pressure ulcers, also called decubitus ulcers or pressure sores, are lesions caused by unrelieved pressure or shear resulting in damage to underlying tissue.  *Id.*   Treatment depends on the stage of the ulcer an usually includes pressure relief and skin protection to prevent progression, debridement of necrotic tissue in Stage 3 and 4 ulcer, wound cleaning, and dressings to promote a moist wound environment for healing.  *Id.*   Infection of pressure wounds is common, and is usually controlled with antibiotics and debridement.  *Id.*  Pressure sores in paraplegics confined to a wheelchair are especially common because of the patient's limited ability to relieve pressure by changing his position.  *Id.*

Plaintiff is confined to a wheelchair and has a neurogenic bladder that leads to incontinence, which puts him at further risk for skin breakdown from the excessive moisture of leaking urine.  *Id.* ¶ 8.  To keep dry, he uses a condom collection system.[3]  *Id.*  Plaintiff also uses suppositories to promote predictable bowel movements, and thus assist in good hygiene.  *Id.*

When Plaintiff arrived in CDCR custody on May 2, 2005, at the California Institution for Men – Reception Center, he was observed to have a decubitus ulcer on the right gluteal area that had developed when he was in the Los Angeles County Jail.  *Id.* ¶ 9.  He was housed in the

---

[2] Although this action only involves Defendant Akanno's care of Plaintiff at KVSP,  the Court includes Plaintiff's previous medical  history to place his treatment at KVSP in context.

[3] Incontinent male  patients often use a condom over the penis and tubing connected to a bag to collect urine rather than a diaper. *Id*. ¶ 8, fn. 1. In common usage, the condom system is called a "condom catheter," although such condom systems do not actually use a catheter, which is a tube inserted into an orifice,  not over it.  *Id.*

medical unit[4] at the prison and subsequently sent for more advanced treatment at Riverside County Regional Medical Center. *Id.*

On August 8, 2005, Plaintiff was transferred to the California State Prison-Corcoran ("CSP") where he was admitted to the Acute Care Hospital ("ACH") for wound care, stabilization, and surgical evaluation. *Id.* ¶ 10. Doctors noted that he had developed a Stage 2 ulcer in county jail that had quickly progressed to Stage 4. *Id.* The wound was treated and surgically repaired in November 2005. *Id.* On October 31, 2007, a physical therapist found that Plaintiff had reached his functional potential and could independently move in his bed, transfer to and from his wheelchair, and carry out the activities of daily living. *Id.* ¶ 12. On January 28, 2009, a doctor asked the ADA Nurse to determine whether Plaintiff's wheelchair had become too small for him because he had gained thirty pounds. *Id.* ¶13. Plaintiff is about 5'9" tall and weighed between 180 pounds to 200 pounds at the time of the events at issue. *Id.* That is 15 to 25% over the ideal body weight for a person of his height. The nurse found that Plaintiff's wheelchair was not too small, but he, nevertheless, was issued a new wheelchair with anti-tipping bars. *Id.* On September 29, 2009, Plaintiff was discharged from outpatient medical housing to the prison's general population. *Id.* ¶ 14. He was given a Comprehensive Accommodation Chrono[5] for a ground floor cell and lower bunk, a cervical pillow, a wheelchair, a Roho cushion (a type of seat cushion that provides pressure relief for wheelchair users), a sheepskin pad, foot splints, hatch and cloth wheelchair gloves, a wheelchair-accessible table, a shower chair, a catheter, grab bars, and a sedentary job assignment. *Id.* That chrono did not provide for an extra mattress. *Id.* The doctor noted that Plaintiff did not need assistance in

---

[4] Inmates with medical conditions requiring regular nursing are often moved to infirmary beds, which are also known as outpatient housing units ("OHU's") or a clinical treatment center ("CTC").

[5] Accommodations provided to inmates to address disabilities or medical needs are called "Comprehensive Accommodation Chronos" or "medical chronos." *Id.* ¶ 14.

transferring from a bed to his wheelchair or in caring for himself. *Id.*

**Plaintiff's Transfer to KVSP**

On October 30, 2009, Plaintiff was transferred to KVSP. Def's Ex. D, Barnett Decl. ¶ 15. Upon Plaintiff's arrival at KVSP, Defendant Akanno ordered a condom collection with leg bag, Chux underpads (absorbent disposable padding to protect his wheelchair and bedding from wetting due to urinary leakage and incontinence), and a cervical pillow. Def's Ex. D, Barnett Decl. ¶ 15. Defendant Akanno also ordered refills of Plaintiff's medications, which included baclofen, 10 mg., four times a day; ibuprofen, 200 mg., three times a day, as needed; gabapentin, 600 mg., three times a day; morphine sulfate, 15 mg., sustained release ("SR"), every twelve hours, as needed, for breakthrough pain; clotrimazole, 1% cream; hydrocortisone, 1% cream, and Vitamin A & D ointment. *Id.* On November 4, 2009, Defendant Akanno saw Plaintiff for an intake evaluation for chronic care and noted that had a history of urinary tract infections ("UTI's") and decubitus ulcers, but that he voiced no complaints at that time. *Id.* ¶ 16. On examination, Defendant Akanno noted that Plaintiff had no ulcers on his gluteal areas and no edema (swelling) in his lower extremities. *Id.* Defendant Akanno ordered Plaintiff's medications re-filled for thirty days, reviewed and approved his prior chronos, and noted that he would receive medical supplies. *Id.* A follow-up was ordered in four to six weeks. *Id.*

During the month of November, 2009, Plaintiff submitted requests for various, additional medical accommodations. *Id.* ¶¶ 17, 18, 19. He sought a larger urine bag or extension tubing, latex gloves and K-Y gel, a "Roho" toilet seat cushion, a thicker mattress, a cervical pillow, a sheepskin pad, and foot splints. *Id.* He also requested a toilet seat to aid with his bowel movements and an "air mattress" to prevent the development of pressure sores and to relieve chronic back pain. *Id.* On November 25, 2009, Defendant Akanno met with Plaintiff to discuss his medical accommodations. *Id.* ¶¶ 21, 22. Defendant ordered that the prison's ADA Nurse be

contacted to replace Plaintiff's seat cushion with a softer one. *Id*. Defendant granted the request for the toilet seat riser and ordered a Komo cushion, but denied Plaintiff's request for a "thicker mattress/double mattress" because he did not meet criteria for a double mattress. *Id*. The CDCR guidelines suggest the following reasons for providing an extra mattress: gross overweight, recent back or neck surgery, severe joint disease visible on X-ray, severe musculoskeletal deformity, or painful hip prosthesis. *Id*. ¶ 22.   Paraplegia is not listed as a condition that merits an extra mattress because there is scant medical evidence that an extra mattress prevents bed sores. *Id*.

Very soft bedding can increase bed sores by impairing mobility. *Id*. ¶ 22, fn. 9.   On November 17, 2009, and November 23, 2009, Plaintiff was seen by nursing staff for various medical complaints. *Id*. ¶¶ 19, 20. Neither of these contacts reflected any pressure sores on Plaintiff's hips or buttocks area. *Id*.   On November 27, 2009, Plaintiff submitted a Health Care Services Request complaining that he had fallen the day before while transferring from his toilet seat to his wheelchair and had hurt his hands, his right shoulder, and his right hip.   *Id*. ¶ 23. He also reported swelling in both feet and ankles and pain. *Id*. A nurse saw him that day and noted redness on the right hip area and on top of his right foot, with swelling in both ankles and referred him to the Treatment and Triage Area ("TTA") nurse. *Id*. No urgent need for acute care or physician services was identified. *Id*.   On November 30, 2009, Plaintiff submitted a Health Care Services Request complaining of three open, bleeding wounds that had not been treated and that could become infected because there was no dressing on them.   *Id*. ¶ 24.   A nurse saw Plaintiff the same day and noted that he had a four-by-four-inch area of redness and swelling on his right hip and a three-by-three-inch area of redness and swelling and an open wound on his left hip. *Id*. The nurse noted that there was an infection risk, provided Bactrim DS, by mouth, b.i.d. (twice a day), and daily dressing changes with antibiotic ointment.   *Id*.   The nurse

instructed Plaintiff to keep the areas clear of infectious objects, to wash his hands, and to return for follow-up in one week. *Id.* This November 30, 2009 medical note is the first record of any observable pressure sore, or beginning stages of a pressure sore during Plaintiff's incarceration at KVSP. *Id.*

The next day, December 1, 2009, Defendant wrote an order for Bactrim DS, one tablet, twice a day, for ten days, for a possible infection; double antibiotic ointment to be applied twice a day for fourteen days; an eggcrate mattress;[6] and referral to the doctor's line for routine updating of his medical chronos. *Id.* ¶ 25. On December 2, 2009, Defendant approved additional and renewed Comprehensive Accommodation Chronos for Plaintiff, including a ground floor cell and lower bunk, a wheelchair, foot splints, a shower chair, a toilet seat riser, a seat cushion, hatch and cloth gloves, a cervical pillow, a wheelchair-accessible table, and a sedentary job assignment. *Id.* ¶ 26.

Throughout December 2009, Plaintiff was seen almost daily by either nurses, or Defendant, or both. *Id.* ¶¶ 27-35. He complained of worsening of the conditions of his hips/buttocks, loss of mobility, pain in his shoulder, back pain, swelling in his legs, abdominal pain, rashes on his feet, and ingrown toenails. (*Id.* ¶¶ 27-33.) He was provided with medications, a flu shot, dressing changes, antibiotics, and diagnostic tests including X-rays. (*Id.*) The X-ray reports were normal. *Id.* ¶ 35. During an appointment with Plaintiff on December 16, 2009, Defendant noted a small area of erythema on his left thigh and no open wound. *Id.* ¶ 30. He diagnosed cellulitis, ordered daily wound dressing changes for two weeks, and a culture and sensitivity test ("C&S"), which is a diagnostic lab procedure used to identify the type of bacteria and to determine which antibiotics can successfully fight an infection. *Id.*

---

[6] An eggcrate mattress is a thin foam mattress with a corrugated surface designed to reduce the risk of pressure points on any bony prominences. The eggcrate mattress is put over the normal mattress. The CDCR guidelines suggest use of an eggcrate mattress for patients with evidence of skin breakdown, or patients at high risk of skin breakdowns, including patients who are paraplegic. *Id.* ¶ 25.

At KVSP, Plaintiff was able to shower every day when the institution was not on lockdown. Def's Ex. C, 35-36:25-2. When the institution was on lockdown, he was able to shower every two days, initially, and then four times per week. *Id.* 35:13-24.   Beginning in January 2010, Plaintiff began requesting the additional accommodation of a medical chrono permitting him to have shower every day at KVSP. *Id.* ¶¶ 36, 46, 51.   Defendant Akanno had ordered daily dressing changes, which was a reasonable measure to treat decubitus ulcers. *Id.* ¶¶ 123-24.   Daily showers would not have necessarily improved the local hygiene of his wound any more. *Id.* Defendant would not have likely been able to order or assure that Plaintiff could have daily showers while living in the general population of prison because the schedule for showering is a matter in custody based upon substantial security concerns. *Id.*

Between January and April 2010, Plaintiff was treated at KVSP for a variety of medical conditions, including the pressure sores on his hips/buttocks. *Id.* ¶¶ 37-70. He reported joint pain and heartburn. *Id.* ¶¶ 39, 46. He was treated with ibuprofen, gabapentin, and oramorph (morphine). *Id.* ¶ 44.   Defendant referred Plaintiff to a podiatrist for treatment of foot drop and ingrown toenails. *Id.* ¶ 64. In March 2010, Plaintiff reported being dizzy and nauseous. *Id.* ¶ 60. Defendant noted blood tests showing an elevated white blood count and low hemoglobin.   *Id.* Because he was concerned about potential anemia and gastrointestinal blood loss as a complication of gunshot wounds, Defendant referred Plaintiff to an outside medical facility where they did at CT scan of the head, and diagnosed vertigo.   *Id.*   Plaintiff was treated with meclinzine and returned to the prison.   *Id.*   For the treatment of the pressure sores, Defendant ordered sterile dressing changes, and C&S testing with corresponding antibiotics as indicated by results of tests.   *Id.* ¶¶ 44, 45, 49, 55, 56, 60, 62, 63, 64. Defendant also continued to renew medical accommodations chronos to assist Plaintiff with hygiene, mobility and to attempt to make Plaintiff more comfortable.   *Id.* ¶¶ 42, 43, 49, 50.

**Plaintiff's Transfer to Treatment Center Within KVSP**

On April 19, 2010, a nurse changing Plaintiff's dressings noted for the first time that there was some yellow fluid oozing from the left-hip sore. *Id*. ¶ 68. On April 21, 2010, the nurse noted that Plaintiff was at risk for infection.   *Id*.   The nurse notified Defendant who ordered an X-ray of the right hip and ordered Plaintiff transferred to the TTA for transfer to hospital after the X-ray was done. *Id*. The X-ray was abnormal although at this time it did not show osteomyelitis (bone infection). *Id*. ¶ 69.

On April 30, 2010, a doctor's note indicates that Plaintiff's antibiotics should be changed and ordered Plaintiff be transferred to the CTC for debridement of the right-hip sore. *Id*. ¶ 71. On May 1, 2010, Plaintiff was transferred to the CTC of KVSP for better wound care.   *Id*. ¶ 72. Throughout May 2010, Defendant continued to monitor Plaintiff as he was awaiting treatment by specialists in wound care. *Id*. ¶¶ 73-78.   In May 2010, Plaintiff developed osteomyelitis. *Id*. ¶¶ 85-87.   At the end of May and throughout June 2010, Plaintiff was treated at the CTC by specialists in wound care and infectious diseases, Drs. Felizarte and Dev, and his general care was monitored by Defendant. (*Id*. ¶¶ 85-94.)

**Plaintiff's Transfers to Outside Hospitals**

Despite prior treatment, by July 2010, Plaintiff's wounds had not healed. In July 2010, Plaintiff was transferred to Mercy Hospital in Bakersfield, California where the infection was treated with antibiotics and the wounds were surgically debrided.   *Id*. ¶ 95.   He was also transferred to Memorial Hospital for hyperbaric oxygen treatment and negative pressure wound therapy, commonly known as "wound vacuum" therapy.   *Id*.   During the fall of 2010, Plaintiff was transferred back and forth between the KVSP CTC and outside hospitals for treatment surgical debridement, intravenous antibiotic therapy, and wound vac therapy. *Id*. ¶¶ 97-102.

Following successful treatment, on February 17, 2011, Plaintiff was discharged in stable condition and released to the KVSP CTC. *Id*. ¶ 103. The discharging doctors ordered that Plaintiff continue on intravenous antibiotics and wound vac therapy. *Id*. ¶ 104.

**Selection of Wound Vac Therapy System**

When Plaintiff was discharged from the hospital to KVSP, Dr. Dev recommended continuation of wound vac therapy. *Id*. ¶ 104. Wound vac systems are machines that use a vacuum pump, drainage tubing, and a dressing set to provide vacuum-assisted draining of the wound and to increase blood flow to aid in the healing of wounds that are not responding to other treatment. Def's Ex. E, Ranson Decl. ¶¶ 15, 16. A number of companies make these systems, each of which may use different types of pumps and wound dressings. *Id*. ¶¶ 16-18. Two of the companies that make wound vac systems are Kinetic Concepts, Inc. ("KCI") and Prospera. *Id*. The KCI system uses a vacuum pump that cycles between being on and off and that uses foam dressings, while the Prospera system uses a pump that cycles between high and low pressure and that uses gauze dressing moistened with sterile saline. *Id*. The KCI system, however, can only be obtained from KCI and is five times more expensive than newer competing systems. *Id*. The KVSP CTC uses the Prospera System. *Id*. ¶ 20. Federal studies have found that there is no evidence that a particular system, or a component of those systems, has a significant therapeutic advantage over another in wound-healing outcomes. *Id*. ¶ 17.

In early July 2011, a specialist recommended that Plaintiff be treated with the KCI wound vac system, as he believed it would be more efficacious in treating Plaintiff's condition. *Id*. ¶ 25. He did not provide his reason for this belief, or provide any evidence that the KCI system was medically proven to be more effective than any other wound vac system. *Id*. ¶ 32. Medical and nursing staff at KVSP and in CDCR inquired about obtaining the KCI system. *Id*. ¶¶ 25-31. They learned that the KCI system was only available directly from the company, and could not be

obtained from Progressive Medical Supply, the contract vendor for CDCR.  *Id*.  Based on the lack of evidence that one system was more efficacious than the other, CDCR declined to purchase the KCI system and Plaintiff was continued on the Prospera system used by KVSP.  *Id*. ¶ 32.

### Resolution of Plaintiff's Medical Condition

By February 27, 2012, Plaintiff's right-hip wound had completely healed. *Id*. ¶ 115. Upon examination one month later, the left-hip wound was also healing. *Id*.  As of January 2013, Plaintiff's wounds appear to have completely healed.  *Id*. ¶ 119.  On November 14, 2012, Plaintiff was transferred out of KVSP to another prison.  *Id*. ¶117.[7]

## IV.   DISCUSSION

### A.   Deliberate Indifference to Serious Medical Needs

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to be held liable, each defendant must have personally participated in the deprivation of the plaintiff's rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it."

---

[7] Defendant includes a medical analysis of Defendant's treatment in his Statement of Undisputed Facts to show that he did not act with deliberate indifference.  Plaintiff's allegations in his verified complaint clearly dispute this analysis, and therefore the Court will not include it in the undisputed facts section.

*Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) a deliberately indifferent response by defendant. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*

The failure to respond to a prisoner's complaints of pain can be sufficient to support an Eighth Amendment claim. *Snow v. McDaniel*, 681 F.3d 978, 990 (9th Cir. 2012); *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002). However, deliberate indifference must be shown and it is a high legal standard. *Toguchi*, 391 F.3d at 1060 (quotation marks omitted). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980), *citing Estelle*, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin v. Smith*, 974 F.2d 1050, 1050 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even

gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### 1.  Defendant's Argument

Defendant argues that he is entitled to summary judgment because he was not deliberately indifferent to Plaintiff.  The evidence shows that Defendant acted appropriately to treat Plaintiff's medical conditions, including the development of pressure sores.

Defendant first addresses Plaintiff's contention that Defendant did not act quickly enough to treat Plaintiff's developing pressure sores at KVSP.  The medical evidence belies Plaintiff's claim.  On the day of Plaintiff's arrival at KVSP, Defendant filled various medical orders for Plaintiff, including refills of his medications, topical treatments, and hygiene supplies to prevent the risk of skin breakdown.  Shortly thereafter, Defendant ordered that the prison's ADA nurse be contacted to replace Plaintiff's seat cushion with a softer one.  Defendant also granted Plaintiff's request for the toilet seat riser and ordered a Komo cushion.

Within five days of Plaintiff's arrival at KVSP, Defendant saw Plaintiff for an intake evaluation for chronic care and noted his history of decubitus ulcers, and performed an examination showing no ulcers on his gluteal areas and no edema (swelling) in his lower extremities.  The applicable standard of care does not require a doctor to disrobe inmates on their first day in the prison.  There was no apparent medical need for an urgent comprehensive skin exam on October 30, 2010. Plaintiff did not have pressure sores when he was seen by nursing staff on November 17, 2009, November 23, 2009, or November 27, 2009.

Second, Defendant argues that Plaintiff received continuing care for his pressure sores at KVSP.  Defendant ordered sterile dressing changes, and wound culture testing with corresponding antibiotics as indicated by results of tests. Defendant also continued to renew medical accommodations chronos to assist Plaintiff with hygiene, mobility and to attempt to make Plaintiff more comfortable. When Plaintiff began to show signs of a bone infection, at the end of April 2010, Defendant immediately ordered an X-ray. Although the X-ray did not show a

bone infection, it was abnormal, which caused Defendant to admit Plaintiff to the KVSP treatment center. When, in May 2010, Plaintiff developed osteomyelitis Plaintiff was referred to specialists in wound care and infectious diseases.   In the fall of 2010, Plaintiff was transferred to outside hospitals for treatment and surgical debridement, intravenous antibiotic therapy, and wound vac therapy.   Although one of the specialists who treated Plaintiff recommended using a particular wound vac system, federal studies have found no evidence that a particular system, or a component of those systems, has a significant therapeutic advantage over another in wound-healing outcomes. The specialist was unable to provide information suggesting his recommended system would improve Plaintiff's outcome. Plaintiff ultimately did quite well on the wound vac system CDCR uses. As of the date of Plaintiff's transfer out of KVSP to another prison, his wounds had healed.

Finally, Defendant argues that the voluminous medical record shows that Defendant provided Plaintiff with all available, appropriate medical accommodations at KVSP.   Plaintiff was provided with a condom catheter collection system, suppositories, a wheelchair and fittings, floor cell and lower bunk chronos, a cervical pillow, a wheelchair, a toilet seat riser, a Komo cushion, an eggcrate mattress, foot splints, a shower chair, a toilet seat riser, a seat cushion, hatch and cloth gloves, a cervical pillow, a wheelchair-accessible table, and a sedentary job assignment.   Defendant was not deliberately indifferent for failing to issue a medical order for daily showers.   Defendant ordered daily dressing changes, which was a reasonable measure to treat decubitus ulcers.   Daily showers would not have improved the local hygiene any more than the dressing changes.   Additionally, Defendant properly responded to Plaintiff's request for specialty mattresses.   Defendant issued an eggcrate mattress to Plaintiff on December 1, 2009, only one day after Plaintiff first showed signs of developing the pressure sores at KVSP. Defendant properly refused to provide Plaintiff with a thicker mattress because very soft bedding can actually increase the risk of pressure sores by impairing mobility while sleeping.

2.      **Plaintiff's Argument**[8]

Plaintiff argues that Defendant Akanno was deliberately indifferent to his serious medical needs for a variety of reasons.   On September 29, 2009, Plaintiff was erroneously discharged from out-patient medical housing to the prison's general population for fiscal reasons.   Thus, Defendant Akanno was deliberately indifferent to Plaintiff's medical needs. [9]

Plaintiff next argues that Defendant is not entitled to qualified immunity.   Existing case law put Defendant on notice of the Eighth Amendment rights involved in this case.   Defendant Akanno has been employed at CDCR for several years and should have been notified by the prison's litigation coordinator of the consent decree.   Defendant knew that the prison was under medical receivership since October 7, 2005.   Thus, Defendant should have ordered Plaintiff back to the Acute Care Hospital instead of attempting to provide medical treatment in the general prison population.

Finally, Plaintiff argues that Defendant Akanno is procedurally barred under the doctrine of collateral estoppel from re-litigating the inadequate medical care provided in CDCR.   The Ninth Circuit's August 24, 2009 order collaterally estops Defendant from prevailing on his motion for summary judgment.[10]

3.      **Defendant's Reply**

Defendant replies that Plaintiff's Opposition does not establish a genuine dispute as to material facts because Plaintiff's Opposition contains conclusory and inadmissible evidence. Plaintiff's Opposition includes information downloaded from the internet concerning the treatment of decubitus ulcer formation and prevention of pressure sore injuries.   Plaintiff has not provided a declaration from a qualified medical expert to indicate that he obtained injury as a result of Defendant's conduct.   Defendant submitted a detailed history of medical care provided

---

[8] Plaintiff's Opposition includes argument that he was subjected to unconstitutional conditions of confinement. Because this action is proceeding only against Defendant Akanno for an Eighth Amendment claim of deliberate indifference to a serious medical need, the Court will only address Plaintiff's arguments on this issue.

[9] Plaintiff was located in CSP during this time and not under the care of Defendant Akanno at KVSP.

[10] Plaintiff does not name the Ninth Circuit court order he refers to in his Opposition, but it appears that he is referring to *Coleman v. Schwarzenegger*, CIV S-90-0520.

to Plaintiff at KVSP in his Statement of Undisputed Facts.   Plaintiff's Opposition does not include any admissible evidence which contradicts the medical care provided to Plaintiff.

Second, Plaintiff's Opposition does not provide admissible evidence to refute the analysis of Defendant's conduct which concluded that his conduct was appropriate and did not constitute deliberate indifference.   Although Defendant denied Plaintiff's request for a thicker mattress, soft shoes, and special shower shoes, Plaintiff has failed to demonstrate that these items were medically necessary.   At most, Plaintiff's Opposition establishes a difference of opinion between Plaintiff and Defendant as to what treatment was appropriate.   A mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not support a claim for deliberate indifference.

Third, Plaintiff's claim that his damages were caused by prison overcrowding is not supported by admissible evidence.   Plaintiff's Opposition presents no evidence demonstrating that the decisions made by Defendant concerning his care were motivated or affected in any way by any overcrowded conditions at KVSP.   Defendant's decisions regarding Plaintiff's care were based solely on whether the treatment requested by Plaintiff was medically necessary.

Finally, Defendant replies that the doctrine of collateral estoppel does not apply in this instance.   First, Defendant was not a party to the *Coleman* litigation and did not actually participate in the litigation issues raised in that case.   Second, the findings contained in the August 4, 2009 order referred to by Plaintiff necessarily pertained to conditions in California prisons prior to Plaintiff's transfer to KVSP.   Thus, the *Coleman* order could not have addressed any of the conditions asserted in the current lawsuit.

## 4.   **Findings**

Plaintiff has established that he has a serious medical condition that required he receive medical treatment. *Jett,* 439 F.3d at 1096.   To establish liability for a defendant's involvement in the denial of medical grievances, Plaintiff must set forth evidence that the medical care he requested was medically necessary and the denial therefore constituted deliberate indifference to his medical needs. *See Toguchi*, 391 F.3d at 1058-60.   While Plaintiff claims that the care he

received at KVSP was inadequate to address his serious medical need, he has submitted no evidence to show that Defendant Akanno was aware that the treatment he was receiving was inappropriate. Deliberate indifference is a high legal standard and even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood*, 900 F.2d at 1334. Plaintiff has failed to meet this high burden to establish that Defendant acted with deliberate indifference to Plaintiff's serious medical needs.

Defendant was attentive to Plaintiff's risk for skin breakdown and prescribed various skin creams on the very first day of his arrival at KVSP on October 30, 2009. Def's Ex. D, Barnett Decl. ¶ 121. Plaintiff alleges that Defendant refused to examine the affected area. FAC at 1. The chart for that day does not make clear whether or not Defendant disrobed Plaintiff and examined all of his skin on that same day. *Id*. However, the medical progress note five days later, on November 4, 2009 does document a skin exam in which no lesions were noted. *Id*. The applicable standards of care do not require that Defendant disrobe inmates on their first day in the prison. *Id*. There was no apparent medical need for an urgent comprehensive skin exam on October 30, 2010. *Id*. Plaintiff's opinion that Defendant needed to examine his skin on the first day of treatment is insufficient to establish deliberate indifference. *Sanchez*, 891 F.2d at 242. The same analysis is applied to Plaintiff's argument that a thicker mattress was required for his medical condition. Defendant submitted evidence that a thicker mattress was not medically appropriate for his condition, and in fact could be harmful, Def's Ex. D, Barnett Decl. ¶ 22 fn. 9, and Plaintiff's difference of opinion fails to establish deliberate indifference. *Sanchez*, 891 F.2d at 242.

Defendant provided substantial, attentive medical care to Plaintiff the entire time he was at KVSP. He exercised his training, experience and medical judgment to provide Plaintiff with appropriate medical treatment for the pressure sores he experienced at KVSP. Def's Ex. F,

Akanno Decl. ¶ 5. He monitored his skin and provided him with treatment appropriate for the increasing severity of skin breakdown, including topical treatments, dressings, oral antibiotics, and referral to outside hospitals and specialists. *Id.*   Pressure ulcers commonly occur in paraplegic patients despite best medical efforts to prevent them. Def's Ex. D, Barnett Decl. ¶ 127. The development of Plaintiff's pressure sores cannot be attributed to Defendant's treatment of Plaintiff. *Id.*

Additionally, Plaintiff argues that Defendant Akanno failed to comply with CDCR guidelines regarding prisoner care.   However, the failure to comply with CDCR regulations does not state a claim for deliberate indifference.   "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996).   Nor is there any liability under § 1983 for violating prison policy.   *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

Finally, Plaintiff's argument that the doctrine of collateral estoppel bars Defendant's motion for summary judgment is without merit.   Defendant Akanno was not a party to the *Coleman* litigation and so did not actually participate in the litigation of the issues raised in that case. *See Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996.)   This rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.' 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981)." *Martin v. Wilks*, 490 U.S. 755, 761-762, 109 S. Ct. 2180, 2184 (1989).

In conclusion, Plaintiff has failed to meet his burden to establish that a genuine dispute as to any material fact exists as to the issue of deliberate indifference. *Matsushita*, 475 U.S. at 586

Although Plaintiff's First Amended Complaint and Opposition allege various actions of deliberate indifference by Defendant, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez*, 891 F.2d at 242. Accordingly, Defendant Akanno is entitled to judgment as a matter of law on the issue of deliberate indifference to a serious medical need.

###    B.    <u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. *Saucier*, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't.* 556 F.3d 1075, 1085 (9th Cir. 2009)). In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendant Akanno argues that he is entitled to qualified immunity. Because the Court grants Defendant's motion based on the foregoing analysis, the Court does not reach Defendant's

argument that he is entitled to qualified immunity.

## V.    CONCLUSION AND RECOMMENDATION

In conclusion, there is no evidence that Defendant acted with deliberate indifference toward Plaintiff.   Accordingly, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed on June 28, 2013, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.   Local Rule 304(b).   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 8, 2013**                    /s/ *Dennis L. Beck*

UNITED STATES MAGISTRATE JUDGE